IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GEORGE B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION** <br><br><br> Case No. 2:21-cv-00295-JNP-DAO <br><br> District Judge Jill N. Parrish |

Before the court is plaintiff George B.'s objection to the Report and Recommendation issued by Judge Oberg. The court overrules George B.'s objection and adopts the Report and Recommendation.

## BACKGROUND

Alleging that he could no longer work due to degenerative joint disease of the hips, degenerative disc disease of the lumbar spine, and mental impairments, George B. applied for disability benefits from the Social Security Administration. After his claim was denied, he requested a hearing from an Administrative Law Judge (ALJ). The ALJ considered numerous medical records and written opinions regarding George B.'s ability to work, including records authored by Dr. Jaffe, who was treating George B. for the degenerative diseases. In October 2018, after a hearing, ALJ Gerald Bruce issued a decision finding that George B. was not disabled. After his request for review from the Appeals Council was denied, George B. appealed to the district court. In April 2020, the district court remanded the case and in May 2020, the Appeals Council

issued an order vacating the October 2018 decision and remanded the case to the ALJ for a new hearing.

After considering an expanded record, the ALJ issued a new decision in December 2020 finding that George B. was not disabled. The ALJ stated that George B. could, with some restrictions, still work. The ALJ's decision stated:

> He can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently. He can stand or walk up to two hours in an eight-hour workday (with normal breaks) and can sit up to six hours in an eight-hour workday (with normal breaks). He can occasionally push and pull foot controls with his bilateral lower extremities. He can occasionally climb ramps or stairs and can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can never be exposed to hazards such as unrestricted heights and dangerous moving machinery. He can occasionally be exposed to extreme cold, extreme heat, and vibration. Due to physical pain, he can perform goal-oriented but not assembly line paced work.

In evaluating George B.'s condition, the ALJ reviewed evidence from George B.'s treating physician, Dr. Jaffe. The ALJ decided that Dr. Jaffe's opinion that George B. was unable to work and "seems appropriate for SSDI" (Tr. 446.) was a conclusory determination that was reserved for the Commissioner and consequently deserved little weight. (*Id.* at 874.) The ALJ also considered Dr. Jaffe's 2018 and 2020 limitation opinions. The ALJ assigned little weight to the 2018 and 2020 opinions because they "consist[] mostly of checked boxes without reference to clinical signs or treatment notes; [they] appear[] to be based on the claimant's subjective reports rather than by medical examination or laboratory findings." (*Id.* at 875.) The ALJ also noted discrepancies between Dr. Jaffe's opinions and other evidence in the record. (*Id.*) Accordingly, the ALJ determined that George B. was not disabled within the meaning of the Social Security Act and denied his application for disability benefits.

George B. filed a petition for review with this court, which referred the case to Magistrate Judge Oberg. Among other issues, George B. argued in his briefing that the ALJ's determination was in error because the ALJ failed to give sufficient weight to Dr. Jaffe's opinion. Judge Oberg issued a Report and Recommendation affirming the ALJ's determination. She reasoned that the ALJ was within his discretion to give only some weight to Dr. Jaffe's opinions because the ALJ considered several legitimate reasons supported by the record for each opinion he discounted. George B. objected to Judge Oberg's Report and Recommendation.

## STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The substantial evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). "In reviewing the record to make the substantial evidence determination, [a court] may not reweigh the evidence nor substitute [its] judgment for the [Commissioner's]." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (third alteration in original) (citation omitted).

In reviewing a magistrate judge's Report and Recommendation, the district court "must determine de novo any part of the [report] that has been properly objected to." FED. R. CIV. P. 72(b)(3).

## ANALYSIS

The ALJ found that George B. was capable of working full time. In her Report and Recommendation, Judge Oberg concluded that the ALJ's finding was supported by substantial evidence. George B. now raises three objections to the Report and Recommendation.

### A. Weight Accorded to the Opinion of Claimant's Treating Physician

George B. argues that the ALJ erred by not assigning proper deferential weight to the opinions of his treating physician, Dr. Jaffe. Specifically, he asserts that summarizing Dr. Jaffe's opinions constitutes insufficient deference. George B. does not provide a source that explains what the proper application of the deference standard entails. George B. asserts that the ALJ report is erroneous because it does not explicitly mention the fact that George B. and Dr. Jaffe's patient-physician relationship lasted nine years, and that Dr. Jaffe is an orthopedist who is treating George B. for musculoskeletal injuries.

The court rejects these arguments. First, the ALJ did not err simply because he failed to expressly state that Dr. Jaffe was a treating source. (Pl.'s Obj. 5, ECF No. 29.) *See Mays v. Colvin*, 739 F. 3d 569, 575 (holding that the ALJ does not need to *expressly* state whether a medical opinion has "controlling weight") (10th Cir. 2014). During the hearing, ALJ Bruce acknowledged that George B.'s conditions started in 2010 and that Dr. Jaffe was George B.'s primary treating physician. (Tr. at 910.) ALJ Bruce asked whether George B. saw any other physicians regularly, and George B. responded that he did not. (*Id.*) This underscores the fact that the ALJ understood that Dr. Jaffe was a treating source.

If "a treating source's medical opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d at 1300 (10th Cir. 2003). The ALJ explained that the reason he gave Dr. Jaffe's opinions little weight is because they were either conclusory opinions of law or were unsupported by clinical signs or treatment notes. (*Id.* at 874–

4

75.) Contrary to George B.'s claim, the ALJ did not just "simply recit[e] treatment notes," he evaluated Dr. Jaffe's opinions. (Pl.'s Obj. 7, ECF No. 29.)

When the ALJ does not give the treating source opinion controlling weight, the ALJ must consult the six factors from 20 C.F.R. § 404.1527(c) to determine the proper weight to be given. The six factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

The ALJ does not need to expressly apply the six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ needs to simply "provide[] good reasons in his decision for the weight he gave to the treating sources' opinions." *Id.* Reasoning that they were conclusory, the ALJ rejected Dr. Jaffe's opinions regarding the appropriateness of SSDI. (Tr. at 874.) The ALJ rejected several other of Dr. Jaffe's opinions because they consisted mostly of checked boxes without reference to clinical signs or treatment notes and appeared to be based primarily on subjective reports. (*Id.*) In other words, the ALJ provided good reasons for allocating less weight to Dr. Jaffe's opinions. Contrary to claimant's objection, the ALJ does not need to expressly refer to the length of the physician-patient relationship or the physician's specialty. The court concludes that George B.'s argument is not sufficient to show that the ALJ afforded too little deference to Dr. Jaffe's opinions.

### B. June 2018 Opinion

George B. objects to the line in Judge Oberg's report and recommendation that states, "[t]he ALJ could properly conclude Mr. B.'s decision to delay or decline recommended treatment indicated he was not as limited as Dr. Jaffe opined." (R. & R. at 14.) George B. alleges that the ALJ's decision does not explicitly list George B.'s refusal to follow the recommended treatment plan as one of the reasons the ALJ discounted Dr. Jaffe's opinion. But this allegation is incorrect. The ALJ's decision expressly states that one of the reasons he gave Dr. Jaffe's June 2018 opinion little weight is because "[t]he opinion is also inconsistent with claimant's own reports that he did not need hip replacements or provider notes that he was trying to delay them." (Tr. at 875.) Furthermore, the Social Security Ruling that claimant cites, Failure to Follow Prescribed Treatment, 83 Fed. Reg. 49,616 (Oct. 29, 2018), only applies after an individual has already met the requirements to qualify for disability benefits. The court therefore concludes that Magistrate Oberg's recommendation upholding the ALJ's treatment of Dr. Jaffe's June 2018 opinion is not based on improper analysis.

### C. August 2020 Opinion

George B. argues that Judge Oberg erred by accepting the ALJ's rejection of Dr. Jaffe's 2020 opinion due to minor discrepancies between his 2018 and 2020 reports. George B.'s objection mischaracterizes both Judge Oberg's recommendation and the underlying ALJ decision. The ALJ's decision discounts Dr. Jaffe's report for several reasons: (1) the 2020 opinion is a form that consists mostly of checked boxes without reference to supporting clinical signs or treatment notes, (2) the 2020 opinion fails to mention a left hip replacement surgery performed a week prior, and (3) the 2020 report lists temperature restrictions that are inconsistent with the 2018 report. (Tr. at 875.)

The temperature discrepancy between the 2018 and 2020 is not the *only* reason, but rather is an *additional* reason the ALJ rejected Dr. Jaffe's opinion. Thus, the court concludes that Judge Oberg did not err in accepting the ALJ's reasons.

## CONCLUSION

The court OVERRULES George B.'s objections and ADOPTS IN FULL the Report and Recommendation. Accordingly, the court affirms the final agency decision of the Commissioner of Social Security denying benefits.

**SO ORDERED** September 28, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge